IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **JOSHUA CACHO,** a Texas resident, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| | § |
| **v.** | § |
| | § |
| **AMITY ONE DEBT RELIEF,** a California | §   3:24-cv-00160-KC |
| Corporation, **ARIYO MACKAY**, a California | § |
| Resident, | § |
| | § |
| **Defendants.** | § |
| | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

**1.**      Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person, a resident of the Western

District of Texas, and was present in El Paso, Texas for all calls relevant to this case.

**2.**      Defendant AMITY ONE DEBT RELIEF ("Amity") is a corporation organized and

existing under the laws of California and can be served via registered agent Paracorp

Incorporated at 2804 Gateway Oaks Dr #100, Sacramento, California 95833, United States.

**3.**      Defendant ARIYO MACKAY ("Mackay") is a natural person, a California resident,

Chief Executive Officer of Defendant Amity, and can be served at 401 Rockefeller Unit #B1407

Irvine, California 92612, United States.

### JURISDICTION AND VENUE

**4.**      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**5.**     This Court has specific personal jurisdiction over Defendant because Defendant

purposefully availed themselves to the State of Texas and to this District, and there is a sufficient

relationship between Defendant's purposeful contacts with Texas and the litigation.  Defendant

purposefully sent calls into Texas despite having no business relationship with Plaintiff.

> a.   Defendants target Texas when marketing debt relief services and regularly
>
>       conduct business in this District, including telephone solicitation.
>
> b.   Defendants purposefully sent phone calls to Plaintiff's El Paso area phone number
>
>       with area code 915 to generate leads for Defendant Amity.
>
> c.   Defendant Mackay directed the calls to be sent into Texas and purposefully
>
>       directed that Texas residents be targeted with the solicitation phone calls.
>
> d.   The purposeful calls to Texas injured Plaintiff in Texas, creating a causal link
>
>       among Defendant, the forum, and the litigation exceeding the non-causal
>
>       affiliation sufficient to support personal specific jurisdiction.  *See Ford Motor Co.*
>
>       *v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

**PERSONAL JURISDICTION**

**6.**     This Court has specific personal jurisdiction over Defendant because they have

repeatedly placed calls to Texas residents and derived revenue from Texas residents, and they sell

goods and services to Texas residents, including Plaintiff.

**VENUE**

**7.**     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

2

Plaintiff resides in this District.

**8.**     This Court has venue over Defendants Amity and Mackay because the robocalls and

direct solicitation calls at issue were sent by or on behalf of the above-named Defendants to

Plaintiff, a Texas resident.


**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

**9.**     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

**10.**     The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number

assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

**11.**     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted

by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §

227(b)(1)(B).

**12.**     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

**13.**     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

**14.**     The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

**15.**     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

**16.**     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

**17.**     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

**18.**     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

*1991,*27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

22.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

23.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A]   predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of

5

numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

**24.**     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

**25.**     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

**26.**     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

**27.**     The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

**28.**     Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**29.** The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

**30.** Plaintiff's personal cell phone ending in 3258 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendant Amity's telemarketers.

**31.** Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on November 21, 2023.

**32.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**33.** Defendant Amity's employees made at least eleven (11) prerecorded solicitation phone calls and four (4) direct solicitation phone calls to Plaintiff's personal phone ending in 3258 without his written or verbal consent, and no emergency validated the purpose for these calls.

**34.** Plaintiff did not give consent to any of the phone calls alleged herein.

**35.** Plaintiff provided a DNC Request to Defendant Amity on two separate prerecorded messaged calls by pressing the number suggested to be removed from the calling lists.

**36.** Plaintiff provided four (4) separate DNC Requests verbally directly to Amity's agents.

**37.** Upon information and belief Defendant Amity called Plaintiff more times with

prerecorded messages in the past that he is currently unaware of without the benefit of Discovery.

**38.**   **Calls #1-2, DNC Request #1-2**, between December 23, 2023 – January 2, 2024, Plaintiff received at least two (2) prerecorded messaged robocalls from Defendant Amity with a message stating something to the effect of "…you have received up to $50,000.00 in a pre-approved business loan… press 1 to speak to a live agent, or press 2 to be removed from our calling list" ("Pre-approved message").

**39.**   Plaintiff is not required to remember verbatim the message that was stated on each call.

**40.**   Calls #1-2, on each call Plaintiff pressed whatever option was stated to be removed from the calling list.

**41.**   Call #3-10, Between January 5, 2024, and February 13, 2024, Plaintiff received the same "pre-approved" prerecorded messaged robocalls described in paragraph 37 at least eight times, on each call after hearing the message Plaintiff hung up the phone.

**42.**   Call #11, On February 16, 2024, at 5:18 PM Plaintiff received a call from Amity with 855-744-0692 appearing on his Caller ID. Plaintiff heard the same "pre-approved message" he had received from Amity in Paragraphs 36 and 40.

**43.**   Plaintiff pressed one to speak to a live agent for the purpose of verifying the identity of who had been calling him, but the call immediately disconnected.

**44.**   Plaintiff clicked on the last number that had appeared on his Caller ID (855-744-0692) and pressed the call option, Plaintiff was then greeted by an agent who stated the message Plaintiff received was sent for the purpose of providing Plaintiff with debt relief services.

**45.**   Plaintiff was transferred to Amity's agent Alan Trofimov ("Trofimov") but Trofimov dropped the call.

46.     Call #12, DNC Request #3, on February 16, 2024, at 5:26 PM, Plaintiff received a direct call from Trofimov. After about thirty (30) minutes on the call Trofimov sent Plaintiff some documents via email confirming the identity of Amity. See Exhibit A. After Plaintiff learned the identity of the responsible party he told Trofimov he was not interested and to never call back, Trofimov confirmed he understood and Plaintiff hung up the phone.

47.     Call #13, DNC Request #4, On February 16, 2024, at 6:11 PM Trofimov called Plaintiff back at 6:11 PM, with 949-393-7871 appearing on his Caller ID. After answering the phone Trofimov stated he knew Plaintiff didn't want to be called back but attempted to solicit him on behalf of Amity again. Plaintiff told him to stop calling and disconnected the line.

48.     Call #14, DNC Request #5, on March 7, 2024, at 10:44 AM Plaintiff received a call from Amity with 949-666-1037 appearing on his caller ID. Plaintiff answered, said hello and was greeted by "Michael from Amity One Debt Relief." Michael immediately stated that he was aware that Plaintiff was not interested and did not want to be called but attempted to solicit him on behalf of Amity anyways.

49.     Call #15, DNC Request #6, on March 7, 2024, Plaintiff received a call back at 10:47 AM from Amity's agent Michael with 949-666-1037 appearing again on his Caller ID. Plaintiff answered and after hearing Michael say something about Amity One Debt Relief Plaintiff told Michael to stop calling and hung up the phone.

50.     Each and every solicitation call from Defendant Amity after January 2, 2023, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendant Amity on December 23, 2023, and more than ten (10) days had passed.

51.     Each and every call phone call between January 5, 2024, and February 16, 2024,

9

was a knowing and willful violation as Plaintiff had informed Defendant Amity's

agents to stop calling multiple times through it's prerecorded message system by

pressing the option to be removed from their calling list on December 23, 2023, and

January 2, 2024, and more than ten (10) days had passed since delivering his first DNC

Request and the call received on January 5, 2024.

**52.**     Plaintiff delivered a total of six (6) DNC requests of which five (5) were

blatantly ignored.

**53.**     Plaintiff did not provide his phone number to Defendant Amity or their agents at

any point.

**54.**     Upon information and belief, Defendant Amity did not have a written do-not-call

policy while their agents were sending Plaintiff the robocalls.

**55.**     Upon information and belief, Defendant Amity did not train their employees

who engaged in telemarketing on the existence and use of any do-not-call list.

**56.**     Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when

made).

**57.**     Amity knew or should have known the requirements for making TCPA-

compliant telemarketing calls and thus knew or should have known that the calls

complained of herein violated the TCPA and its regulations.

**58.**      Defendant knew or should have known the requirements for making TCPA and Texas

sales-compliant telemarketing calls, and thus knew or should have known that the unauthorized

solicitation calls and the many disregarded DNC requests complained of herein violated the

TCPA, Texas Business Commerce Code 302.101 and all of their regulations.

**59.**     No emergency necessitated these calls.

**60.**     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## DEFENDANT MACKAY IS PERSONALLY LIABLE

## FOR THE CALLS MADE BY AMITY

**61.**     Defendant Mackay is personally liable for the solicitation calls described herein because he is in control at all of where the calls are sent, how the calls are made, and is in charge of the prerecorded message phone system that was used to make the calls.

**62.**     Defendant Mackay purchased the technology and equipment to be able to make calls with a prerecorded message.

**63.**     Defendant Mackay ordered that the equipment he purchased be used to make the prerecorded message phone calls.

**64.**     Defendant Mackay wrote the script that was used for the prerecorded message that was sent to Plaintiff, Mackay also chose the individual to record the script he wrote and was present during the recording of the message.

**65.**     Mackay initiated the dialing campaign and directed how the calls were to be placed, ie., using the prerecorded message system, which cities and states to target, and how many calls to place per minute.

**66.**     Mackay is the mastermind behind the marketing campaign of Amity.

## TEXAS BUSINESS AND COMMERCE CODE 302.101

11

**67.**     Plaintiff was located in Texas at all times during the calls at issue.

**68.**     Plaintiff has been a Texas resident since July 2023 and maintains a Texas area code (915) telephone number.

**69.**     Each of the calls at issue in this case was to a Texas area code telephone number.

**70.**     On May 13, 2024, Plaintiff searched for a telephone solicitation registration for Defenant at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

**71.**     Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration.  Plaintiff did not find any registration for Defendant.

**72.**     Defendant has never been registered to telephone solicit from Texas, or into Texas.


## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

**73.**     Defendant Amity's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**74.**     Defendant Amity's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**75.**     Defendant Amity's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

**76.**     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

**77.**     The calls were to Plaintiff's cellular phone number 915-259-3258 which is Plaintiff's

personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**CAUSES OF ACTION:**

**COUNT ONE:**

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

**(against all Defendants)**

**78.**     Plaintiff re-alleges and re-adopts paragraphs 1 through 77 of the Complaint as if fully set forth herein.

**79.**     Defendant Amity and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(iii), at least eleven (11) times by placing non-emergency telemarketing prerecorded messaged calls to Plaintiff's personal telephone number without prior written consent.

**80.**     Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(b)(3)(B) by Defendant Amity by the calls described above, in the amount of $500.00 per call.

**81.**     Plaintiff was further statutorily damaged because Defendant Amity willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage of amount of $1,500.00 as permitted under 47 U.S.C. § 227(b)(3)(C) for each and

every willful and/or knowing violation.

82.      Plaintiff is also entitled to and does seek an injunction prohibiting Defendant Amity

and their employees, affiliates and agents from violating 47 U.S.C. § 227(b)(1)(A)(iii), by

placing non-emergency telemarketing prerecorded messaged robocalls to any telephone

number without prior written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R.**
**§ 64.1200(C))**
**(against all Defendants)**

83.      Plaintiff incorporates the preceding paragraphs 1-77 as if fully set forth herein.

84.      Defendant Amity's agents called Plaintiff's private residential telephone number

which was successfully registered on the National Do-Not-Call Registry more than thirty-one

(31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47

U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

85.      Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. §

227(c)(3)(F) by Defendant Amity by the telemarketing calls described above, in the amount of

$500.00 per call.

86.      Plaintiff was further statutorily damaged because Defendant Amity willfully and/ or

knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the

damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or

knowing violation.

87.      Plaintiff is entitled to an award up to $1,500 in damages for each knowing or

willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (against all Defendants)

**88.**     Plaintiff incorporates the preceding paragraphs 1-77 as if fully set forth herein.

**89.**     Defendant Amity and/or their affiliates or agents made at least fifteen (15) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

**90.**     As a result of Defendant Amity's and/or their affiliates or agent's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

**91.**     As a result of Defendant's and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants Amity and Mackay jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA, and Texas Business and Commerce;

C.     An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(b) intentional violations jointly and severally against the corporations for

11 calls.

D.      An award of $1500 per call in statutory damages arising from the TCPA 47

U.S.C §227(c) intentional violations jointly and severally against the corporations for

15 calls.

E.      An award of $5,000 in statutory damages arising from violations of the

Texas Business and Commerce code 302.101 intentional violations jointly and

severally against the corporation for fifteen (15) calls.

F.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law

and equity.

G.      Such further relief as the Court deems necessary, just, and proper.

## JURY
## DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

May 15, 2024,                                   Respectfully submitted,

*Joshua Cacho*

Joshua Cacho
Plaintiff, Pro Se
P.O. Box 26971
El Paso, TX 79926
407-780-9810
Jcacho1848@gmail.com